The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Berger. The appealing parties have not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except with minor modifications.
***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing as:
 STIPULATION
1. All stipulations contained in the Pre-Trial Agreement are received into evidence and incorporated herein by reference.
***********
The Full Commission adopts with minor modifications the findings of fact found by the Deputy Commissioner and finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was a forty-two year old male with an eighth grade education. From June 14, 1996 until March 1997, plaintiff was employed as a molding press operator with defendant-employer.
2. Plaintiff's job duties with defendant-employer involved the processing of casters and brakeshoes. Plaintiff worked with casters that weighed about twenty pounds. Plaintiff would initially have to lift the casters from a crate at the floor level to a height of approximately three feet. Plaintiff would lift the casters using his index and long fingers of his right hand in a flexed position in order to get them out and place them on a cart one at a time until he had placed twelve casters on to the cart. Plaintiff would move the cart to another area of the plant where he would move the casters one at a time using his index and long fingers of his right hand in order to sandblast the caster. Plaintiff would remove the twelve casters from the cart using the index and long fingers of his right hand in a flexed position in order to sandblast each piece and then he would place the twelve casters back into the cart and move them to an area where they were sprayed six at a time and placed into a hot box. After the twelve casters would dry, he would place them six at a time back in the cart using his index and long finger. He would then transport them to a location where he would place the casters into a mold on to a machine. He removed casters that were in the machine prior to placing new casters into the mold. Sometimes the casters in the mold were stuck, and he would have to jerk them out of the machine. He would then dump materials from a stock bucket into a cabin in three different areas of the machine. He would then repeat this process on a second machine. He would then load the casters into a mold on the machine and press a button to operate the machine. He would then take the casters that he had removed from the machine and clean them and place them into a box. The two machines ran in approximately fifteen minute cycles.
3. Plaintiff would perform the process described in paragraph two, fourteen times during an eight hour shift. Plaintiff would only use his right hand in moving the casters.
4. In addition to the casters that plaintiff handled, he would also process materials to make brakeshoes. He would process eight brakeshoes during an individual cycle. He would sometimes have to pry the brakeshoes out of a machine with a file. He did resistive flexion and extension motions with his right wrist as well as some pronation and supination motions with his right elbow while doing this filing. He would take eight baskets of material and then dump those materials into the machine that made the brakeshoes. He would then carry the finished brake shoes to a stop bucket where he would load them. He would have about a minute left before the cycle would start over. The cycle took about nineteen minutes. He would repeat this cycle eighteen to nineteen times per shift.
5. On March 19, 1997, plaintiff reported to Dr. Subin that he was experiencing tingling in all of his fingers of his right hand. At that time Dr. Subin suspected that the tingling and numbness in plaintiff's little finger and ring finger was a result of cubital tunnel syndrome and the tingling in his middle and index fingers was a result of carpal tunnel syndrome. A March 27, 1997 EMG revealed that plaintiff had a motor sensory median neuropathy at the wrist. While studies were done that examined plaintiff's ulnar nerve, no conclusions were drawn at that time concerning whether an injury had been sustained to the ulnar nerves in plaintiff's right hand.
6. On May 6, 1997, Dr. Subin performed a carpal tunnel surgical release in plaintiff's right hand. During the surgical procedure, Dr. Subin observed that plaintiff had sustained flexor tenosynovitis in his right hand. The inflammation of plaintiff's tendons in his right hand resulted in compression of the median nerve in plaintiff's right hand.
7. As a result of plaintiff's flexor tenosynovitis and carpal tunnel syndrome in his right hand, plaintiff was unable to earn wages for the time period beginning May 6, 1997 to May 27, 1997.
8. As a result of symptoms of tingling, numbness, and paresthesias in his ulnar digits (plaintiff's little finger and ring finger) of his right hand, Dr. Subin restricted plaintiff from returning to work beginning June 16, 1997 to June 25, 1997.
9. On July 11, 1997, plaintiff underwent additional nerve conduction studies that revealed a mild right ulnar sensory neuropathy. These studies did not reveal a right ulnar motor nerve neuropathy.
10. As a result of tingling and numbness in the ulnar digits (plaintiff's little and ring fingers) of both his right and left hand as well as pain in the hypothenar eminence of his left hand, Dr. Subin restricted the plaintiff from returning to performing the job duties as set forth in paragraphs two and three with the defendant-employer beginning August 1, 1997. Defendant-employer did not have any other job available to the plaintiff.
11. Dr. Subin did not restrict the plaintiff from doing the job duties described in paragraphs two and three because of any problems resulting from the flexor tenosynovitis and carpal tunnel syndrome in plaintiff's right hand. The July 11, 1997 nerve conduction studies had revealed that there had been an improvement in the right median nerve in plaintiff's right hand since the March 27, 1997 EMG nerve conduction study and the May 6, 1997 carpal tunnel surgery.
12. On August 1, 1997, Dr. Subin continued to suspect that the problems in plaintiff's right hand were the result of right cubital tunnel syndrome with ulnar neuritis at the wrist and elbow. Dr. Subin referred the plaintiff to Dr. Bynum for a second opinion. Based upon an examination of plaintiff's right hand, Dr. Bynum recommended that plaintiff undergo a surgical release of plaintiff's ulnar nerve at both his right elbow and right wrist.
13. From August 1, 1997 to March 1, 1998, plaintiff sought employment at a number of fast-food places.
14. Pursuant to the direction of plaintiff's attorney Mr. Lindler, plaintiff sought medical treatment from Dr. Oakley on February 3, 1998. Plaintiff reported that pain and tingling had returned to his long finger, index finger and thumb in his right hand even though he had not worked for six months. The numbness in plaintiff's ring finger and little finger in his right hand had not resolved since he first reported these symptoms to Dr. Subin on March 19, 1997. Dr. Oakley opined that plaintiff's problems with his right hand should not prevent the plaintiff from engaging in gainful employment. He also opined that he could not establish with any certainty that the plaintiff's residual condition was secondary to his work. During his deposition, Dr. Oakley explained that he did not know whether plaintiff's right hand pain was work-related. Dr. Oakley was of the opinion that plaintiff no longer had carpal tunnel syndrome at the time that he examined the plaintiff's right hand. Dr. Oakley specifically informed plaintiff's counsel that he was of the opinion that this reoccurrence of plaintiff's symptoms was not related to his work with defendant-employer.
15. On or about March 1, 1998, plaintiff obtained a job doing late night cleanup work at a Hardees. Plaintiff did this cleanup work for approximately three months and then stopped due to pain he was experiencing in his right hand.
16. On March 6, 1998, a second examination of plaintiff's blood sugar revealed that plaintiff had diabetes.
17. Beginning on May 11, 1998, Dr. Currin, plaintiff's family physician, restricted the plaintiff from returning to work at Hardees because of the pain he was experiencing in his right wrist and right arm. Dr. Currin was of the opinion that plaintiff's problems were coming in part from carpal tunnel syndrome in his right hand as well as cubital tunnel syndrome in his right arm.
18. Diabetes is a well know cause of peripheral neuropathy and ulnar neuritis. Cubital tunnel syndrome and ulnar neuritis are closely related. Diabetes also causes carpal tunnel syndrome when sugar deposits occur in the median nerve and damage the conduction of the nerve thereby leading to symptoms of burning pain, numbness and ultimately to complete loss of feeling in the area supplied by that nerve.
19. Plaintiff's job duties with defendant-employer as described in paragraphs two and three were a causative factor in the development of the flexor tenosynovitis and carpal tunnel syndrome in the plaintiff's right hand that was surgically treated by Dr. Subin. Plaintiff's carpal tunnel syndrome in his right hand was a direct and natural result of the flexor tenosynovitis that was observed by Dr. Subin.
20. There is insufficient expert evidence of record to support a finding that plaintiff's job duties with the defendant-employer placed him at an increased risk in developing or aggravating any condition of his ulnar nerve in his right wrist and elbow including any condition of his left ring and little fingers as compared to the public not so equally exposed.
21. Plaintiff's right handed carpal tunnel syndrome surgically treated by Dr. Subin had resolved sometime between August 1, 1997 and February 3, 1998.
22. Plaintiff's reoccurrence of pain in his index and long fingers of his right hand as reported to Dr. Oakley on February 3, 1998 was not a direct and natural result of any job duties that plaintiff performed for defendant-employer. This reoccurrence of pain may be the result of carpal tunnel syndrome induced by his diabetic condition or may be pain resulting from an aggravation of a diabetically induced carpal tunnel syndrome by his job duties with Hardees or a result of both of these factors.
***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff sustained multiple occupational diseases in that his job duties as a molding press operator with defendant-employer caused him to sustain flexor tenosynovitis in his right hand. As a direct and natural result of this compensable tenosynovitis, plaintiff sustained carpal tunnel syndrome in his right hand as well. N.C. Gen. Stat. § 97-53(21)
2. Plaintiff is entitled to temporary total disability compensation in the amount of $260.02 per week for the time period beginning May 6, 1997 to May 27, 1997. N.C. Gen. Stat. §97-29.
3. Plaintiff is entitled to have the defendants pay for all medical treatment that was reasonably necessary to effect a cure, provide relief or lessen plaintiff's disability as a result of his compensable flexor tenosynovitis and resulting carpal tunnel syndrome in his right hand as treated by Dr. Subin. N.C. Gen. Stat. § 97-25.
4. Plaintiff has failed to show by the greater weight of the evidence that the problems with his ulnar nerve including problems with his little and ring fingers are a result of his job duties with the defendant-employer. As a result of these problems with his ulnar nerve, plaintiff was unable to earn any wages for the time period beginning June 16, 1997 to June 27, 1997 and August 1, 1997 to March 1, 1998. Plaintiff is not entitled to receive disability compensation from the defendants for the time period beginning June 16, 1997 to June 27, 1997 and August 1, 1997 to March 1, 1998. N.C. Gen. Stat. § 97-53(13); N.C. Gen. Stat. § 97-29.
5. Plaintiff has failed to show by the greater weight of the evidence that the problems that plaintiff has in his index and long fingers of his right hand as reported to Dr. Oakley on February 3, 1998 and to Dr. Bynum in May of 1998 were a result of the job duties that plaintiff performed with the defendant-employer. N.C. Gen. Stat. § 97-53(13).
***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay temporary total disability compensation resulting from plaintiff's flexor tenosynovitis and resulting carpal tunnel syndrome in the amount of $260.02 per week for the time period beginning May 6, 1997 to May 27, 1997 and no further. This amount has accrued and shall be paid in a lump sum to the plaintiff subject to the attorney's fee approved below.
2. Plaintiff's claim for permanent partial disability compensation for his compensable flexor tenosynovitis and carpal tunnel syndrome in his right hand that was treated by Dr. Subin is HEREBY RESERVED.
3. A reasonable attorney's fee of twenty-five percent of the compensation due plaintiff under paragraph 1 of this Award is approved for plaintiff's counsel and shall be paid as follows: Twenty-five percent of the lump sum due plaintiff shall be deducted from that sum and paid directly to plaintiff's counsel.
4. Defendants shall pay expert witness fees in the amount of $155.00 to Dr. Currin, $235.00 to Dr. Subin, $295.00 to Dr. Oakley, $295.00 to Dr. Bynum and $100.00 to Mr. Baldwin.
5. Defendants shall pay the costs.
This the ___ day of December, 1999.
S/_____________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/_____________ LAURA KRANIFELD MAVRETIC COMMISSIONER
S/_____________ RENEE C. RIGGSBEE COMMISSIONER
DCS/nwg